USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  __4/12/2022__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
DEVENDRA RAJ ACHARYA,                            :
                                                 :
                    Plaintiff,                   :        **REPORT &**
                                                 :        **RECOMMENDATION**
         -v-                                     :        18-CV-8010 (MKV) (JLC)
                                                 :
JIMMY K. SOLANKI,                                :
                                                 :
                    Defendant.                   :
                                                 :
----------------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable Mary Kay Vyskocil, United States District Judge:**

Plaintiff Devendra Raj Acharya was a full-time employee at 7-Eleven, Inc. in

Manhattan from July 2015 to June 2017.  Acharya alleges that defendant Jimmy

Solanki, a franchisee of 7-Eleven, violated the Fair Labor Standards Act and New

York Labor Law by failing to pay him minimum wages, a spread of hours premium,

and overtime compensation and by failing to provide him with wage statements and

wage notices.  Solanki never responded to the complaint.  Accordingly, Acharya

moved for a default judgment against Solanki, which the Court granted.  On August

19, 2021, this matter was referred to me for an inquest into damages.  For the

reasons which follow, I recommend that Acharya receive $48,680.58 in damages

(plus pre-judgment interest on $19,340.29 of the damages), $25,596.70 in attorneys'

fees and costs, and post-judgment interest.

1

## I.   BACKGROUND

### A. Facts

The following facts, which are drawn from a review of Acharya's pleadings, affidavits, and submissions related to this inquest, are deemed established for the purpose of determining the damages to which he is entitled.  *See, e.g.*, *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (internal citation omitted); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor[.]") (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

Solanki is a franchisee of 7-Eleven, which he owns and operates at 107 East 23rd Street in Manhattan.  Second Amended Complaint ("Compl."), Dkt. No. 49 ¶¶ 8–10, 27, 48.  From July 24, 2015 to June 29, 2017, Acharya was employed by Solanki as a full-time employee.  *Id.* ¶ 47.[1]  During his employment, Acharya was generally scheduled to work for 12-hour shifts, five to seven days per week, resulting in a 60 to 84-hour work week.  *Id.* ¶¶ 49–50.  Solanki agreed to pay Acharya at a rate of (1) $9 per hour for the period from July 24, 2015 to December

---

[1] While Acharya's Second Amended Complaint alleges a date of employment beginning on July 24, 2015, there are discrepancies throughout the record, with the start date of employment listed as June 24, 2015 in several instances (which may simply be a typographical error).  However, these discrepancies do not impact the Court's analysis below because Acharya does not seek relief for any weeks worked prior to July 24, 2015.

17, 2015; (2) $10 per hour for the period from December 18, 2015 to January 19, 2017; and (3) $11 per hour for the period January 20, 2017 to June 29, 2017.  *Id.* ¶ 53.  Acharya alleges that Solanki failed to pay his fixed salary for all the weeks worked, failed to pay him overtime wages despite working more than 40 hours as required by the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and failed to provide him with wage statements and wage notices as required by NYLL.  *Id.* ¶¶ 55–88.  Acharya also contends that Solanki did not pay him a "spread of hours" premium.  *Id.* ¶ 54.

### B. Procedural History

On September 3, 2019, Acharya commenced this action against 7-Eleven, Inc. and Solanki.  Dkt. No. 1.  On December 13, 2019, 7-Eleven, Inc.'s motion to dismiss was granted pursuant to Rule 12(b)(6), and it is no longer a party in this action. Dkt. No. 40.  On September 2, 2020, the Court granted Solanki's counsel's motion to withdraw, after which Solanki proceeded *pro se*.  Dkt. No. 58.  On September 23, 2020, the Court issued an order to show cause  to Solanki and his prior counsel as to why it should not enter sanctions or a default judgment against Solanki.  Dkt. No. 59.

After Solanki failed to appear at the hearing, the Court struck his answer and  granted Acharya permission to seek a certificate of default and file a motion for default judgment on November 13, 2020.  Dkt. No. 74.  The Court subsequently entered a default judgment against Solanki as to liability  on August 19, 2021.  Dkt.

3

No. 97.[2]  On August 19, 2021, this case was referred to me to conduct an inquest. Dkt. No. 98.  Accordingly, I directed the parties to file their submissions concerning damages.  Dkt. No. 99.  Thereafter, on November 12, 2021, Acharya submitted his proposed findings of fact and conclusions of law, requesting damages under the FLSA and NYLL.  Proposed Findings of Fact ("Proposed Findings"), Dkt. No. 108, at 10.  Solanki has filed no opposition to Acharya's inquest submissions.

## II.   DISCUSSION

### A. Legal Standards

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.  The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted). "[E]ven when the defendant[s] default[ ] and [are] not present to object," a plaintiff still has the burden of establishing his entitlement to "damages . . . based on admissible evidence."  *House v. Kent Worldwide Mach. Works. Inc.,* 359 F. App'x 206, 207 (2d Cir. 2010).  To establish damages upon default, a plaintiff must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded."  *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 159 (2d Cir. 1992).

---

[2] The Court declined to enter a default judgment with respect to Acharya's retaliation claim under the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), because he failed to plead a prima facie case of retaliation.  Dkt. No. 97.

4

The Second Circuit has long approved the process of conducting an inquest by affidavit, without an in-person court hearing, "'as long as [the court has] ensured that there was a basis for the damages specified in the default judgment.'" *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989)).  In this case, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman,* No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (S.D.N.Y. June 15, 2016) (quoting *Fustok,* 873 F.2d at 40), *adopted by* 2016 WL 4532201 (Aug. 29, 2016).

An employee seeking to recover unpaid wages "'has the burden of proving that he performed work for which he was not properly compensated.'" *Jiao v. Chen,* No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 689 (1946)).  "[T]he employee should not speculate, but may rely on his present memory and recollection to carry the burden." *Maldonado v. La Nueva Rampa, Inc.,* No. 10-CV-8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012) (internal citations and quotation marks omitted), *adopted by* Order dated Aug. 9, 2012 (Dkt. No. 20).  Absent "rebuttal by defendants . . . [the employee's] recollection and estimates of hours worked are presumed to be correct." *Kernes v. Glob. Structures, LLC,* No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (internal citations

and quotation marks omitted) (alterations in original), *adopted by* Order dated Mar. 1, 2016 (Dkt. No. 27).

## B. Analysis

As a threshold matter, there is no applicable statute of limitations defense under NYLL here; however, there is under the FLSA. Acharya alleges that he worked at 7-Eleven from July 2015 to June 2017 (Compl. ¶ 47), and these allegations are accepted as true given Solanki's default. *See, e.g., Herrara v. 12 Water St. Gourmet Cafe, Ltd.*, No. 13-CV-4370 (JMF) (RLE), 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016) (collecting cases), *adopted by* 2016 WL 1268266 (Mar. 31, 2016). The limitations period for violations of the relevant provisions of NYLL is six years. *See* NYLL § 663(3). Because all of Acharya's claims accrued within the six years preceding the filing of the Complaint in 2018, all his NYLL claims are timely.

However, under the FLSA, the statute of limitations is two years for standard violations and three years for willful violations. *See* 29 U.S.C. § 255(a). Acharya alleges that Solanki acted willfully (Compl. ¶¶ 60, 61), and this allegation is also accepted as true given Solanki's default. *See, e.g., Wicaksono v. XYZ 48 Corp.*, 10-CV-3635 (LAK) (JCF), 2011 WL 20222644, at *3 (S.D.N.Y May 2, 2011) (because defendant defaulted and complaint alleged willfulness, plaintiffs entitled to willfulness finding and application of FLSA three-year statute of limitations), *adopted by* 2011 WL 2038973 (May 24, 2011). Therefore, the limitations period for all of Acharya's federal claims is three years. *See, e.g., Rodriguez v. Queens*

*Convenience Deli Corp.*, No. 09-CV-1089 (KAM) (SMG), 2011 WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011).  Under the FLSA, "[t]he statute of limitations starts to accrue when the employee begins to work for the employer."  *Id.*  Because Acharya alleges that he began working for Defendants in July 2015 (Compl. ¶ 47) and he commenced this action on September 3, 2018, more than three years after his start date, most of his employment period falls outside the statute of limitations under the FLSA.  Dkt. No. 1.  Consequently, while Acharya's NYLL claims are covered by the relevant statute of limitations,  his FLSA claims accruing before September 3, 2015 are barred.

### 1. Unpaid Wages

#### a. Applicable Law

Because at least some of Acharya's federal claims are barred by the statute of limitations, the Court considers damages only under NYLL.[3]  Here, Acharya alleges that during his employment, which lasted from July 2015 to June 2017, he was not paid regular, overtime, or spread of hours wages.  Compl. ¶ 54.

Under state law, employers must pay employees a statutory minimum wage. *See* NYLL § 652(1); 12 NYCRR § 146-1.2.  Under NYLL, the state minimum wage between December 31, 2014 and December 30, 2015 was $8.75 per hour.  *See* NYLL

---

[3] While a plaintiff may not recover under both the FLSA and NYLL for the same injury, "courts allow plaintiffs to recover under the statute that provides for the greatest relief."  *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *6 (S.D.N.Y. Sept. 8, 2016), *adopted by* 2016 WL 6879258 (Nov. 21, 2016).  Because NYLL allows for greater recovery than the FLSA at all relevant times during Acharya's employment, the Court will apply NYLL for all damages calculations.

§ 652(1).  The state minimum wage between December 31, 2015 and December 30, 2016 was $9 per hour.  *Id.*  Finally, from December 31, 2016 to December 30, 2017 the state minimum wage increased to $11 per hour for large employers and $10.50 per hour for small employers.  *Id.*  Moreover, the "spread of hours" provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee's spread of hours exceeds ten hours.  12 NYCRR § 142-2.4.  The spread of hours is defined as "the interval between the beginning and end of an employee's work day," including "working time plus time off for meals plus intervals off duty."  *Id.* § 142-2.18.  Effective January 1, 2011, employers are required to pay a spread of hours premium for "all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay."  12 NYCRR § 146-1.6(d).

Finally, state law requires employers to pay employees one and one-half times the minimum wage for time worked in excess of 40 hours per week.  12 NYCRR §§ 146-1.4, 142-2.2.  Appropriate overtime wages are "calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half.  The rate is then multiplied by the number of hours in excess of forty hours the employee worked each week."  *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 16000057, at *4 (S.D.N.Y. Apr. 7, 2015), *adopted by* 2015 WL 4557147 (July 28, 2015).

### b. Calculations Under the Applicable Law

Acharya states that he worked for Solanki from June 2015 to June 2017. Plaintiff's Affidavit in Support of Damages dated November 10, 2021 ("Acharya Aff."), Dkt. No. 110 at ¶ 5.  According to the allegations in his Second Amended Complaint, during his employment Acharya was paid (1) $9 per hour for the period from July 24, 2015 to December 17, 2015; (2) $10 per hour for the period from December 18, 2015 to January 19, 2017; and (3) $11 per hour for the period from January 20, 2017 to June 29, 2017.  Compl. ¶ 53.  Acharya's regular rate thus satisfies the minimum wage under NYLL. However, he alleges that he was not paid regular wages for both the period of July 24, 2015 to July 30, 2015 and June 23, 2017 to June 30, 2017.  Proposed Findings ¶ 3(b); Acharya Aff. ¶ 5.[4]  Using Acharya's regular rate, the Court calculates the following regular wages owed for his period of employment:

**Table 1: Regular Compensation Acharya Should Have Earned**

| Pay Period | Rate | Regular Hours Worked | Amount Owed |
|---|---|---|---|
| 7/24/15-7/30/15 | $9 | 40 | $360 |
| 6/23/17-6/29/17 | $11 | 40 | $440 |

---

[4] The Proposed Findings of Fact also allege that Acharya was not paid regular wages from June 9, 2015 to June 15, 2015.  Proposed Findings ¶ 7. Because this period is not mentioned elsewhere in the record and because it is inconsistent with the alleged start date of Acharya's employment, the Court will not consider this period in its damages calculation.

Based on these calculations, Acharya was owed a total of **$800 ($360 + $440)**.

Additionally, Acharya was never paid overtime compensation.  Compl. ¶ 54; Acharya Aff. ¶ 14.  Acharya alleges he worked a total of (1) 670 hours of overtime from July 24, 2015 to December 17, 2015; (2) 1,424 hours of overtime from December 18, 2015 to January 19, 2017; and (3) 349.29 hours of overtime from January 20, 2017 to June 29, 2017.  Proposed Findings ¶ 3; Acharya Aff. ¶ 13. Using Acharya's regular and overtime rates, Acharya Aff. ¶¶ 5–8, the Court calculates the following overtime owed for these periods of employment:

**Table 2: Overtime ("OT") Compensation Acharya Should Have Earned**

| Pay Period | Hours Worked | Regular Hourly Rate | OT Rate | Total OT Wages |
|---|---|---|---|---|
| 7/24/15-12/17/15 | 670 | $9 | $13.50 | $9,045 |
| 12/18/15-1/19/17 | 1424 | $10 | $15 | $21,360 |
| 1/20/17-6/29/17 | 349.29 | $11 | $16.50 | $5,763.29 |

| Pay Period | Wages Acharya Should Have Earned | Wages Acharya Was Paid | Amount Owed |
|---|---|---|---|
| 7/24/15-12/17/15 | $9,045 | $5,634 | $3,411 |
| 12/18/15-1/19/17 | $21,360 | $14,240 | $7,120 |
| 1/20/17-6/29/17 | $5,763.29 | $3,292 | $2,471.29 |

Based on these calculations, Acharya is owed a total of **$13,002.29 ($3,411 + $7,120 + $2,471.29)**.

Lastly, Acharya did not receive a spread of hours premium, even though he was generally scheduled to work 12 hours per day, five to seven days a week, for an average of six days over his employment period.  Proposed Findings ¶ 5; Compl. ¶¶ 49–50; Acharya Aff. ¶¶ 9–10.

**Table 3: Spread of Hours ("SOH") Acharya Should Have Earned**

| Pay Period | Weeks Worked | Over 10 Hour Days | Minimum Wage | Weekly SOH Owed | Amount Owed |
|---|---|---|---|---|---|
| **7/24/15-12/30/15** | 22 | 6 | $8.75 | $52.50 | $1,155 |
| **12/31/15-12/30/16** | 52 | 6 | $9 | $54 | $2,808 |
| **12/31/16-6/29/17** | 25 | 6 | $10.50 | $63 | $1,575 |

Based on these calculations, Acharya was owed a total spread of hours premium of **$5,538 ($1,155 + $2,808 + $1,575).**

The Court thus recommends that Acharya be awarded **$19,340.29 ($800 + 13,002.29 + $5,538)** in damages for unpaid regular, overtime, and spread of hours wages.

## 2. Liquidated Damages

Acharya also seeks liquidated damages.  Proposed Findings ¶¶ 17–18; Compl. ¶¶ 12, 17 (Prayer for Relief); Plaintiffs' Memorandum of Law in Support of Inquest for Damages ("Pl. Mem."), Dkt. No. 109 at 13–14.  Under NYLL, an employee is

entitled to liquidated damages "equal to [100%] of the total of such underpayments found to be due," "unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law."  NYLL §§ 198(1-a), 663(1).  "Courts deem defendants' actions willful where they have defaulted and . . . such defaulting defendants will have obviously made no showing of good faith." *Schalaudek v. Chateau 20th St. LLC*, No. 16-CV-11 (WHP) (JLC), 2017 WL 729544, at *10 (S.D.N.Y Feb. 24, 2017) (quoting *Xochimitl*, 2016 WL 4704917, at *18 ), *adopted as modified by* 2017 WL 1968677 (May 11, 2017).

Because Solanki has defaulted, I recommend that Acharya receive **$19,340.29** in liquidated damages.

### 3. Statutory Damages

Under New York's Wage Theft Prevention Act ("WTPA"), employers must provide to employees, "with every payment of wages," a statement that lists the following:

> the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.... [T]he statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked.

NYLL § 195(3).

The WTPA also requires that employers provide each employee with a wage notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by
> the hour, shift, day, week, salary, piece, commission, or
> other; allowances, if any, claimed as part of the minimum
> wage, including tip, meal, or lodging allowances; the
> regular pay day designated by the employer in accordance
> with section one hundred ninety-one of this article; the
> name of the employer; any "doing business as" names
> used by the employer; the physical address of the
> employer's main office or principal place of business, and
> a mailing address if different; the telephone number of
> the employer; plus such other information as the
> commissioner deems material and necessary.

NYLL § 195(1)(a).

Employees who are not provided a wage notice within ten business days of their first day of work can recover damages of "$50 for each workday that a violation occurs or continues to occur, not to exceed $5,000," and employees can recover "$250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." *Canaveral v. Midtown Diner NYC, Inc.*, No. 19-CV-635 (JLC), 2019 WL 4195194, at *5 (S.D.N.Y. Sept. 5, 2019) (citation omitted), *adopted by* 2019 WL 6170058 (Nov. 19, 2019).

Acharya alleges he never received the required notice containing rates of pay, the regular pay, overtime pay, and other required information. Compl. ¶¶ 72, 74; Acharya Aff. ¶ 18. Because he worked more than 100 days for Solanki, he is entitled to the maximum $5,000 for wage statement violations and $5,000 for wage notice violations, for a total of **$10,000**.

### 4. Pre-Judgment Interest

Acharya also seeks pre-judgment interest. Proposed Findings ¶¶ 11–12; Compl. ¶ 14 (Prayer for Relief). "[C]ourts typically award pre-judgment interest on

damages for NYLL violations." *Pineda v. Frisolino, Inc.*, No. 15-CV-3774 (GBD), 2017 WL 3835882, at *13 (S.D.N.Y. Aug. 29, 2017) (quoting *McLean v. Garage Mgmt. Corp.*, No. 09-CV-9325 (DLC), 2012 WL 1358739, at *10 (S.D.N.Y. Apr. 19, 2012)).  Pre-judgment interest is appropriate even when a plaintiff is also awarded liquidated damages under NYLL.  *See, e.g., id.* (citing *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).  Pre-judgment interest applies only to the actual, compensatory damages, and not to liquidated damages or to damages recovered due to violations of wage statement or wage notice provisions.  *See, e.g., Salustio v. 106 Columbia Deli Corp.*, No. 15-CV-6857 (GWG), 2017 WL 3736695, at *14 (S.D.N.Y. Aug. 30, 2017) (pre-judgment interest "not available for violations of the wage statement or wage notice provisions" and "applies only to the amount of underpayment of wages, not the liquidated damages").  New York law provides that interest shall be at the rate of nine percent per year.  N.Y. C.P.L.R. § 5004.  Courts in this District have generally calculated pre-judgment interest from "a singular, midpoint date and by multiplying the principal by the interest rate by the time period — from a singular, midpoint date — up until and including the date judgment is entered." *Soto v. Los Corbaticas Deli Grocery II Corp.,* No. 18-CV-3602 (JGK) (JLC), 2018 WL 4844018, at *7 (S.D.N.Y. Oct. 5, 2018), *adopted by* 2018 WL 6173713 (Nov. 23, 2018).

For Acharya, the reasonable intermediate date is July 11, 2016, which is the midpoint between the first time (July 24, 2015) and the last time (June 29, 2017) that he was not paid regular, overtime, and spread of hours wages.  *See* Proposed

14

Findings ¶ 11.  Thus, I recommend that Acharya receive nine percent interest on a balance of $19,340.29 from July 11, 2016 until and including the date judgment is entered.

### 5. Post-Judgment Interest

Acharya also seeks post-judgment interest.  Proposed Findings ¶ 12; Compl. ¶ 14 (Prayer for Relief).  "Plaintiffs are entitled to post-judgment interest on all money awards as a matter of right."  *Tacuri v. Nithin Constr. Co.,* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015) (citations omitted). According to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  *See Tacuri*, 2015 WL 790060, at *12.  Acharya is therefore entitled to post-judgment interest on all sums awarded, commencing when the Clerk of the Court enters judgment until the date of payment.

### C. Attorneys' Fees

Acharya also seeks attorneys' fees in the amount of $56,768.65.  Declaration of Durga P. Bhurtel in Support of Request for Certificate of Default dated November 12, 2021 ("Bhurtel Decl."), Dkt. No. 111 at ¶ 9.  NYLL allows prevailing plaintiffs to receive reasonable attorneys' fees and costs.  NYLL § 198(l-a).  Courts determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Millea v. MetroNorth R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011);

*Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182,
183 (2d Cir. 2008).

A plaintiff must "document the application [for fees and costs] with
contemporaneous time records . . . specify[ing], for each attorney, the date, the
hours expended, and the nature of the work done." *N. Y. State Assn'n for Retarded
Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *see also Scott v. City of
N.Y.*, 626 F.3d 130, 132 (2d Cir. 2010).  Ultimately, a court's discretion to set a fee
award is broad.  *See Hensley*, 461 U.S. at 437; *Matusick v. Erie Cnty. Water Auth.*,
757 F.3d 31, 64 (2d Cir. 2014).

### 1. Reasonable Hourly Rate

The reasonable hourly rate is the amount "a reasonable, paying client would
be willing to pay," which varies by practice area and location.  *See Arbor Hill
Concerned Citizens Neighborhood Ass'n,* 522 F.3d at 190.  The reasonable rate is
generally determined using "the market rates prevailing in the community for
similar services by lawyers of reasonably comparable skill, experience, and
reputation." *Restivo v. Hessemann,* 846 F.3d 547, 590 (2d Cir. 2017) (quoting
*Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)) (internal quotations
omitted).  To make this determination, a court may "rely on its own knowledge of
local, comparable rates." *Schalaudek,* 2017 WL 729544, at *12 (citing *Yuquilema v.
Manhattan's Hero Corp.,* No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *3–4
(S.D.N.Y. Aug. 26, 2014)).

16

In "determining the reasonableness of the requested attorneys' fees, the Court considers the quality of the work done by the attorneys." *Harris v. Fairweather,* No. 11-CV-2152 (PKC) (AJP), 2012 WL 3956801, at *8 (S.D.N.Y. Sept. 10, 2012) (reducing fee award where "documents that counsel submitted in connection with the inquest were mediocre, included numerous errors, and failed to cite to authority for much of the relief requested"), *adopted by* 2012 WL 5199250 (Oct. 19, 2012); *see also Poparic v. European Music & Video Store,* No. 08-CV-2081 (KAM) (JO), 2009 WL 6318212, at *9 (E.D.N.Y. Dec. 16, 2009) ("[W]hile attorneys with similar numbers of years experience . . . may occasionally garner higher fees, the sub-par quality of the legal work in this case warrants a lower hourly rate."), *adopted by* 2010 WL 1260598 (Mar. 31, 2010).

In this case, Acharya seeks an hourly rate of $400 for attorney Durga Prasad Bhurtel.  In his declaration, Mr. Bhurtel provided relatively minimal information regarding his legal experience.  He does say that he has been practicing law in the State of New York since March 2004, and that he is the only attorney in the State of New York who practices this area of litigation that can speak English, Nepali, and Hindi.  Bhurtel Decl. ¶¶ 7-8.  Courts in this District routinely award hourly rates of $300 to $400 per hour for experienced attorneys in labor and employment law cases. *See, e.g., Wan v. YWL USA Inc.*, No. 18-CV-10334 (CS), 2021 WL 1905036, at *5 (S.D.N.Y. May 12, 2021) (hourly rates for senior attorneys handling wage-and-hour cases typically range from $300 to $400).  However, courts have awarded a lower hourly rate in cases that did not present novel or difficult questions of law or

evidentiary challenges due to defendants' default. *See, e.g.*, *Mondragon v. Keff*, No. 15-CV-2529 (JPO) (BCM), 2019 WL 2551536, at *13 (S.D.N.Y. May 31, 2019) (hourly rate of $350 was appropriate even for experienced attorney), *adopted by* 2019 WL 2544666 (June 20, 2019). Consistent with these decisions, the Court recommends an hourly rate of $350 for Mr. Bhurtel.

Acharya also seeks hourly rates of $75 for paralegal Sumarna Shrestha and $150 for associate attorney Uttam Pandey. Bhurtel Decl. ¶ 9. Neither Ms. Shrestha's nor Mr. Pandey's legal experience is provided. However, hourly rates of $100 to $150 for paralegals and $200 to $300 for associates are reasonable in FLSA actions in this District. *See, e.g.*, *Canaveral*, 2019 WL 4195194, at *8; *see also Guang Ping Zhu v. Salaam Bombay, Inc.*, No. 16-CV-4091 (JPO), 2019 WL 76706, at *2 (S.D.N.Y. Jan. 2, 2019) ($100 to $150 per hour for paralegals); *Velandia v. Serendipity 3, Inc.*, No. 16-CV-1799 (AJN), 2018 WL 3418776, at *4 (S.D.N.Y. July 12, 2018) ("Courts in this District routinely approve of an hourly rate for associates between $200 and $300"). Therefore, an hourly rate of $75 per hour for Ms. Shrestha and an hourly rate of $150 per hour for Mr. Pandey are both reasonable.

## 2. Reasonable Hours Expended

"After determining the appropriate hourly billing rate, the court calculates the hours reasonably expended." *Pastor v. Alice Cleaners, Inc.,* No. 16-CV-7264 (JLC), 2017 WL 5625556, at *8 (S.D.N.Y. Nov. 21, 2017) (internal quotation marks omitted). "In evaluating the reasonableness of hours expended, courts consider 'not whether hindsight vindicates an attorney's time expenditures, but whether, at the

time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *O.R. v. N.Y.C. Dep't of Ed.,* 340 F. Supp. 3d 357, 366–67 (S.D.N.Y. 2018) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1999)).  Courts must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, No. 15-CV-10078 (LGS) (GWG), 2019 WL 2438966, at *9 (S.D.N.Y. June 12, 2019) (citing *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994)), *adopted by* 2019 WL 2717153 (June 28, 2019).  "In determining what fee is reasonable, the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).

"Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended." *Williams*, 368 F. Supp. 3d at 656–57 (citing *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 526 (E.D.N.Y. 2017)).  "In making its determination of the percentage reduction to be used, the Court is guided by rough justice principles . . . '[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.'" *Id.* at 660 (quoting *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018)).

In this case, Mr. Bhurtel billed 128.48 hours, Mr. Pandey billed 28.63 hours, and Ms. Shrestha billed 1.28 hours.  Dkt. No. 111-2.  While Ms. Shrestha's

requested hours are reasonable, Mr. Bhurtel and Mr. Pandey's requested hours are excessive.

First, Mr. Bhurtel's requested hours are excessive for a "standard wage-and-hour dispute" with a "speedy resolution by default judgment." *Lora v. Grill on 2nd LLC*, No. 18-CV-4949 (JMF), 2018 WL 5113953, at *2 (S.D.N.Y. Oct. 19, 2018). Mr. Bhurtel billed 128.48 hours in this case, which far exceeds what is typically awarded in wage-and-hour cases where the defendant defaults. *See Salazar v. 203 Lena Inc.*, No. 16-CV-7743 (VB) (JLC), 2020 WL 5627118, at *13 (S.D.N.Y. Sept. 18, 2020) (finding 121.2 hours more than doubles typical hours awarded), *adopted by* 2020 WL 6257158 (S.D.N.Y. Oct. 23, 2020); *see, e.g. Lopez v. Emerald Staffing, Inc.*, No. 18-CIV-2788 (SLC), 2020 WL 915821, at *14 (S.D.N.Y. Feb. 26, 2020) (68.5 hours reasonable in multiple plaintiff wage-and-hour case litigated for nearly two years but ultimately decided on default); *Gonzales v. Gan Israel Pre-Sch.*, No. 12-CV-6304 (MKB) (VMS), 2014 WL 1011070, at *21 (E.D.N.Y. Mar. 14, 2014) (49.9 hours reasonable in two-plaintiff wage-and-hour case where defendants defaulted). Even accounting for the fact that this case required Mr. Bhurtel to prepare a motion to dismiss as well as a default judgment motion, the lack of complexity of legal issues and procedures justify a significant reduction of the requested hours. *See, e.g., Lora*, 2018 WL 5113953, at *1–2 ("In light of the seeming lack of complexity of the legal and procedural issues at play and counsel's time and labor, the Court finds that the fee request should be reduced by 50%."). Accordingly, an overall 50% reduction in Mr. Bhurtel's hours is reasonable in this case.

Second, many of Mr. Pandey's time entries reflect purely clerical work. *See, e.g.,* Dkt. No. 111-2 ("Mail to Solanki" 12/23/20; "Motion uploaded to SDNY PACER" 12/23/2020; "Documents print and manage" 11/13/2020; "Document update, sign, scan" 11/20/2020; "Court order review, filing, cal[e]ndering" 10/6/2020; "Physical file sorting" 10/6/20). A reduction of fees is warranted where an attorney's reasonable hourly rate is billed for clerical tasks. *See Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019) (10% reduction appropriate when clerical tasks billed at attorney rate). Courts in this District have employed across-the-board reductions of 40% for the failure to delegate tasks to a more junior attorney or paralegal and for billing attorney hours for clerical or paralegal tasks. *Singh v. Meadow Hill Mobile Inc.*, No. 20-CV3-853 (CS) (AEK), 2021 WL 4312673, at *16 (S.D.N.Y. Aug. 9, 2021), *adopted by* 2021 WL 3862665 (S.D.N.Y. Aug. 29, 2021). As such, a 40% reduction is warranted for Mr. Pandey's requested hours in this case.

## Table 4: Attorneys' Fees

| Name | Hourly Rate | Hours | Total |
|------|-------------|-------|-------|
| Durga Bhurtel | $350 | 64.24 (128.48 less 50%) | $22,484 |
| Uttam Pandey | $150 | 17.18 (28.63 less 40%) | $2,576.70 |
| Sumarna Shrestha | $75 | 1.28 | $96 |
| | | | **$25,156.70** |

Accordingly, the Court recommends an attorneys' fees award of $22,484 for

Mr. Bhurtel, $2,576.70 for Mr. Pandey, and $96 for Mr. Shrestha for a total of

**$25,156.70**.

### 3. Costs

An employee who prevails in a wage-and-hour action is entitled to recover

costs.  NYLL § 663(1).  "As with attorneys' fees, [a] requesting party must

substantiate the request for costs."  *Guo v. Tommy's Sushi, Inc.,* No. 14-CV-3964

(PAE), 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016); *see also, e.g., Euceda v.*

*Preesha Operating Corp.,* No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4

(E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not

entitled to recover costs . . . Plaintiff has failed to provide any substantiation, such

as invoices or receipts, documenting the costs he now seeks to recover."), *adopted by*

2017 WL 3084408 (July 18, 2017).

Acharya seeks costs in the amount of $748.60: $400 for the case filing fee,

$120 for process server fees, $52.15 for postage and delivery, and $176.50 for

copying and printing.  Dkt. No. 111-1.  The Court takes judicial notice of the $400

filing fee and the $40 statutory fee for service of process on the New York Secretary

of State.  *See, e.g., Soto*, 2018 WL 4844018, at *9 (taking judicial notice of $400

filing fee); *Empire State Carpenters Welfare v. M.V.M. Contracting Corp.*, No. 10-

CV-1801 (ADS) (WDW), 2011 WL 887726, at *3 (E.D.N.Y. Jan. 31, 2011) (taking

judicial notice of $40 statutory fee for service of process on New York Secretary of

State), *adopted by* 2011 WL 890746 (Mar. 10, 2011)).  However, counsel has not

submitted underlying documentation for the process server fees or the fees for postage, delivery, copying and printing.  The Court does not recommend the award of costs without proper documentation.  *See Pastor*, 2017 WL 5625556, at *9.  The Court thus recommends the award of costs of **$440**.

### III.   CONCLUSION

For the foregoing reasons, I recommend that Acharya be awarded $48,680.58 in damages (consisting of unpaid minimum and overtime wages, and liquidated and statutory damages), plus prejudgment interest on $19,340.29 of the damages in an amount to be calculated upon entry of judgment, attorneys' fees and costs in the amount of $25,596.70, and post-judgment interest on all sums.

Moreover, Acharya has requested that "[i]f this court's judgment or court order awarding remedies . . . is unpaid upon the expiration of ninety days following issuance of judgment or ninety days after . . . the time to appeal and [no] appeal is pending, which [ever] is later, the total amount of judgment shall automatically increase by fifteen percent."  Pl. Mem. at 18 (citing NYLL § 198(4)).  Because the Court is recommending that damages be awarded under NYLL, the amount of the judgment should automatically increase if the conditions set forth in § 198(4) are met.  *See, e.g., Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787 (JCM), 2019 WL 3715086, at *2 (S.D.N.Y. Aug. 7, 2019), *aff'd*, 812 F. App'x 49 (2d Cir. 2020); *Hernandez v. Jrpac Inc.*,No. 14-CV-4176 (PAE), 2016 WL 3248493, at *36 (S.D.N.Y. June 9, 2016).

## PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Mary Kay Vyskocil, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Vyskocil.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 12, 2022
    New York, New York

                                                  JAMES L. COTT
                                                  United States Magistrate Judge